1   PAUL L. REIN, Esq. (SBN 43053)
    JULIE A. OSTIL, Esq. (SBN 215202)
2   ANN WINTERMAN, Esq. (SBN 222257)
    LAW OFFICES OF PAUL L. REIN
3   200 Lakeside Dr., Suite A
    Oakland, CA 94612
4   Tel: (510) 832-5001
    Fax: (510) 832-4787
5
    Attorneys for Plaintiff:
6   ANDI MILLARD

7   MERRILL G. EMERICK, Esq. (SBN 117248)
    ANDERLINI, FINKELSTEIN, EMERICK & SMOOT
8   400 South El Camino Real, Suite 700
    San Mateo, CA 94402
9   Tel: (650) 348-0102
    Fax: (650) 348-0962
10
11  Attorney for Defendants:
    HENRY L BRYANT and
12  ANNE BRYANT

13  CHARLES J. KATZ, ESQ. (SBN 68459)
    475 El Camino Real, Suite 300
14  Millbrae, CA 94030
    Tel: (650) 692-4100
15  Fax: (650) 692-2900
16
    Attorney for Defendant:
17  ZHAO HONG MIAO

18              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
19

20  ANDI MILLARD,                       CASE NO. C07-04795 PHJ
                                        Civil Rights
21          Plaintiff,

22  v.                                  **CONSENT DECREE AND [~~PROPOSED~~]
                                        ORDER**
23
    CHEF KING RESTAURANT; ZHAO
24  HONG MIAO, dba CHEF KING
    RESTAURANT; HENRY L. BRYANT;
25  ANNE BRYANT; and DOES 1-10,
    Inclusive,
26
27          Defendants.

28  _____/

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and [Proposed] Order:                                    1
Case No. C07-04795 PJH

s:\jobreserve\chef king\pleading\chef king consent decree final.doc

## CONSENT DECREE AND ORDER

1.      Plaintiff ANDI MILLARD filed a Complaint in this action on September 18, 2007, to obtain recovery of damages for her discriminatory experiences, denial of access, and denial of her civil rights, and to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California civil rights laws against Defendants, ZHAO HONG MIAO dba CHEF KING RESTAURANT; HENRY L. BRYANT; ANNE BRYANT, relating to the condition their public accommodations as of Plaintiff's visit of April 21, 2007, and continuing.  Plaintiff has alleged that Defendants violated Title III of the ADA and sections 51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and sections 19955 *et seq.,* of the California Health and Safety Code by failing to provide full and equal access to their facilities at the Chef King Restaurant located at  2214 S. El Camino Real, San Mateo, California.

2.      Defendants ZHAO HONG MIAO, dba CHEF KING RESTAURANT; HENRY L. BRYANT; ANNE BRYANT, deny the allegations in the Complaint and by entering into this Consent Decree and Order do not admit liability to any of the allegations in Plaintiff's Complaint filed in this action.  The parties hereby enter into this Consent Decree and Order for the purpose of resolving this lawsuit without the need for protracted litigation, and without the admission of any liability.

## JURISDICTION:

3.      The parties to this Consent Decree agree that the Court has jurisdiction of this matter pursuant to 28 USC §1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 USC 12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations of California Health & Safety Code §19955 *et seq*., including §19959; Title 24 California Code of Regulations; and California Civil Code §§51; 52; 54; 54.1; §54.3; and 55.

4.      In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Consent Decree agree to entry of this Order to resolve all claims raised in the Complaint filed with this Court.  Accordingly, they agree to the entry of this Order without trial

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and [Proposed] Order:
Case No. C07-04795 PJH

2

n:\jkcases\chef king\pleading\chef king consent decree final.doc

1    or further adjudication of any issues of fact or law concerning Plaintiff's claims.

2    WHEREFORE, the parties to this Consent Decree hereby agree and stipulate to

3    the Court's entry of this Consent Decree and Order, which provides as follows:

4

5    **SETTLEMENT OF INJUNCTIVE RELIEF**:

6    5.    This Order shall be a full, complete, and final disposition and settlement of

7    Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject

8    Complaint. The parties agree that there has been no admission or finding of liability or

9    violation of the ADA and/or California civil rights laws, and this Consent Decree and Order

10    should not be construed as such.

11    6.    The parties agree and stipulate that the corrective work will be performed in

12    compliance with the standards and specifications for disabled access as set forth in the

13    California Code of Regulations, Title 24-2 and Americans with Disabilities Act Accessibility

14    Guidelines, unless other standards are specifically agreed to in this Consent Decree and Order.

15    7.    Remedial Measures: The corrective work agreed upon by the parties is as set

16    forth in Attachment A, the report of plaintiff's consultant Jonathan Adler. Defendants agree to

17    undertake the work found within the "Recommendations" section of Mr. Adler's report. Where

18    there are options defendants may select any of the listed options.

19    8.    Timing of Injunctive Relief: Defendants will submit plans for all corrective

20    work to the appropriate governmental agencies within 60 days of entry of this Consent Decree

21    and Order by the court, will commence work within 30 days of receiving approval from the

22    appropriate agencies, and will complete all work within 60 days of commencement. For work

23    not requiring building permits, the work will be completed within 30 days of entry of this

24    Consent Decree and Order by the court. In the event that unforeseen difficulties prevent

25    Defendants from completing any of the agreed-upon injunctive relief, Defendants or their

26    counsel will notify Plaintiff's counsel in writing within 15 days of discovering the delay.

27    Defendants or their counsel will notify Plaintiff's counsel when the corrective work is

28    completed, and in any case will provide a status report no later than 120 days from the entry of

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and [Proposed] Order:
Case No. C07-04795 PJH

3

s:\jr\cases\chief king\pleading\chief king consent decree final.doc

1    this Consent Decree.

2

3    **DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES, AND COSTS:**

4    9.    The parties have reached an agreement regarding Plaintiff's claims for

5    damages, attorney fees, litigation expenses and costs. Defendants will pay the amount of

6    $10,000 within 30 days in full satisfaction of plaintiff's claims for all damages including

7    personal injury, civil rights, and all other form of damages. Defendants will pay the amount of

8    $27,500 in full satisfaction of plaintiff's claims for attorney fees, litigation expenses, and costs

9    within 60 days. Payment(s) shall be made by check payable to "Paul L. Rein in Trust for Andi

10    Millard."

11

12    **ENTIRE CONSENT ORDER:**

13    10.    This Consent Decree and Order and Attachment A to this Consent Decree,

14    which is incorporated herein by reference as if fully set forth in this document, constitutes the

15    entire agreement between the signing parties, and no other statement, promise, or agreement,

16    either written or oral, made by any of the parties or agents of any of the parties, that is not

17    contained in this written Consent Decree and Order, shall be enforceable regarding the matters

18    described herein.

19

20    **CONSENT ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

21    11.    This Consent Decree and Order shall be binding on Plaintiff ANDI MILLARD;

22    Defendants ZHAO HONG MIAO, dba CHEF KING RESTAURANT; HENRY L. BRYANT;

23    ANNE BRYANT; and any successors in interest. The parties have a duty to so notify all such

24    successors in interest of the existence and terms of this Consent Decree and Order during the

25    period of the Court's jurisdiction of this Consent Decree and Order.

26

27    ///

28    ///

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

**Consent Decree and [Proposed] Order:**
**Case No. C07-04795 PJH**

4

s:\jb\cases\f\chef king\pleading\chef king consent decree final.doc

1  **MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO**

2  **INJUNCTIVE RELIEF ONLY:**

3      12.    Each of the parties to this Consent Decree understands and agrees that there is a

4  risk and possibility that, subsequent to the execution of this Consent Decree, any or all of them

5  will incur, suffer, or experience some further loss or damage with respect to the Lawsuit which

6  are unknown or unanticipated at the time this Consent Decree is signed.  Except for all

7  obligations required in this Consent Decree, the parties intend that this Consent Decree apply to

8  all such further loss with respect to the Lawsuit, except those caused by the parties subsequent

9  to the execution of this Consent Decree. Therefore, except for all obligations required in this

10  Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands,

11  actions and causes of action by the parties to this Consent Decree with respect to the Lawsuit,

12  whether the same are known, unknown or hereafter discovered or ascertained, and the

13  provisions of Section 1542 of the California Civil Code are hereby expressly waived.  Section

14  1542 provides as follows:

15          A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE

16          CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR

17          AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR

18          HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT

19          WITH THE DEBTOR.

20      13.    Except for all obligations required in this Consent Decree, each of the parties to

21  this Consent Decree, on behalf of each, their respective agents, representatives, predecessors,

22  successors, heirs, partners and assigns, releases and forever discharges each other Party and all

23  officers, directors, shareholders, subsidiaries, joint venturers, stockholders, partners, parent

24  companies, employees, agents, attorneys, insurance carriers, heirs, predecessors, and

25  representatives of each other Party, from all claims, demands, actions, and causes of action of

26  whatever kind or nature, presently known or unknown, arising out of or in any way connected

27  with the Lawsuit.

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and [Proposed] Order:
Case No. C07-04795 PJH

5

1    **TERM OF THE CONSENT DECREE AND ORDER**:

2        14.    This Consent Decree and Order shall be in full force and effect for a period of

3    twelve (12) months after the date of entry of this Consent Decree and Order, or until the

4    injunctive relief contemplated by this Order is completed, whichever occurs later.  The Court

5    shall retain jurisdiction of this action to enforce provisions of this Order for twelve (12) months

6    after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is

7    completed, whichever occurs later.

8

9    **SEVERABILITY**:

10       15.    If any term of this Consent Decree and Order is determined by any court to be

11   unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in

12   full force and effect.

13

14   **SIGNATORIES BIND PARTIES**:

15       16.    Signatories on the behalf of the parties represent that they are authorized to bind

16   the parties to this Consent Decree and Order.  This Consent Decree and Order may be signed in

17   counterparts and a facsimile signature shall have the same force and effect as an original

18   signature.

19

20   Dated: June    , 2008

21                                                        _____
                                                         Plaintiff ANDI MILLARD
22

23   Dated: June    , 2008

24                                                        _____
                                                         Defendant ZHAO HONG MIAO, dba CHEF
25                                                       KING RESTAURANT

26

27

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and [Proposed] Order:                                    6
Case No. C07-04795 PJH

c:\jr\cases\c\chef king\pleadings\chef king consent decree final.doc

1
2  **TERM OF THE CONSENT DECREE AND ORDER**:
3      14.   This Consent Decree and Order shall be in full force and effect for a period of
4  twelve (12) months after the date of entry of this Consent Decree and Order, or until the
5  injunctive relief contemplated by this Order is completed, whichever occurs later. The Court
6  shall retain jurisdiction of this action to enforce provisions of this Order for twelve (12) months
7  after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is
8  completed, whichever occurs later.
9
10  **SEVERABILITY**:
11     15.   If any term of this Consent Decree and Order is determined by any court to be
12  unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in
13  full force and effect.
14
15  **SIGNATORIES BIND PARTIES**:
16     16.   Signatories on the behalf of the parties represent that they are authorized to bind
17  the parties to this Consent Decree and Order. This Consent Decree and Order may be signed in
18  counterparts and a facsimile signature shall have the same force and effect as an original
19  signature.
20
21  Dated: June __, 2008
22                                         Plaintiff ANDI MILLARD
23
24  Dated: June 2/6 2008
25                                         Defendant ZHAO HONG MIAO, dba CHEF
26                                         KING RESTAURANT
27
28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

Consent Decree and [Proposed] Order;          6
Case No. C07-0470S PJH

1  Dated: June 26, 2008

2                                        _____
                                         Defendant HENRY L. BRYANT
3  Dated: June 26, 2008                  under power of attorney
4                                        for Henry L. and Anne
5                                        _____
                                         Defendant ANNE BRYANT
6  APPROVED AS TO FORM:                  Bryant and as co-
                                         trustees 6-26-08
7  Dated: June 26, 2008                  PAUL L. REIN
                                         JULIE A. OSTIL
8                                        ANN WINTERMAN
                                         LAW OFFICES OF PAUL L. REIN
9
                                         _____
10                                       Attorneys for Plaintiff
11                                       ANDI MILLARD

12 Dated: June 26, 2008                  MERRILL G. EMERICK, Esq.
13                                       ANDERLINI, FINKELSTEIN,
                                         EMERICK & SMOOT
14
15                                       _____
                                         Attorneys for Defendants
16                                       HENRY L BRYANT and ANNE BRYANT

   Dated: June 26, 2008                  CHARLES A. KATZ, ESQ.
17
18
19                                       _____
                                         Attorneys for Defendant
20                                       ZHAO HONG MIAO

21                                    **ORDER**

22      Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

23

24 Dated: ___7/1/08_____

25

26

27

28

LAW OFFICES OF
PAUL L. REIN
200 LAKESIDE DR., SUITE A
OAKLAND, CA 94612-3503
(510) 832-5001

IT IS SO ORDERED
Judge Phyllis J. Hamilton

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ATTACHMENT "A"

**Chef King Restaurant**
2214 El Camino Real
San Mateo, CA

## Disabled Access Evaluation: Assessment of Architectural Barriers

Inspection Date: 12/13/07

Survey performed by: _____

Jonathan Adler, Principal
ACCESS COMPLIANCE SERVICES
ICBO Accessibility Inspector/Plans Examiner #0886919-21
CA Contractor Lic. #707965
(831) 429-4191

Part I:    Basis For Identifying Inaccessible Features ........................................................................... 2
Part II.    Basis For Determining The Requirement To Correct Inaccessible Features.................... 2
Part III:  Summary Of Architectural Barriers.................................................................................. 4
Part IV: Detailed Inventory of Architectural Barriers ..................................................................... 6
Part V:  Recommendations ............................................................................................................. 12

## Part I:  Basis For Identifying Inaccessible Features

• ANSI A117.1-1961.................................................................................(1970 to 1981)
American National Standards Institute standards for accessibility, as applied to public accommodations in California pursuant to Govt. Code 4450 and H&S Code 19955

• CA Code of Regulations, Title-24 Part 2, Volume 1  ................................ (1982 to present)
The California Building Code as applies to public accommodations, pursuant to CA Health & Safety Code 19955

• The Americans with Disabilities Act Title III–28 CFR Part 36, Appendix A . (1990 to present)
The Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities

## Part II. Basis For Determining The Requirement To Correct Inaccessible Features

**1. Violations:** Architectural features that failed to meet the applicable state or federal regulations when they were originally constructed are required to be corrected. This applies to:

  a) Newly constructed facilities that were improperly built
  b) Alterations to existing facilities that were improperly built, with or without a permit.
  c) Path of Travel- Alterations in which an accessible path of travel was not properly provided to the altered area. Under California law since 1982, and under the ADA since 1990, the altered area was required to comply with disabled access standards in addition to another requirement that was also triggered, called *path of travel*.

*Path of travel* requires that the route to the altered area must be made accessible, which includes parking when it is provided, as well as exterior routes, an entrance, interior routes as needed, the restrooms that serve the altered area, and drinking fountains and telephones that serve the altered area. When the cost of providing the path of travel is an *unreasonable hardship*, that is it exceeds 20% of the project's total cost, the access improvements can be limited to that which can be accomplished for that amount (i.e. 20% of the total cost). However, under California law, the path of travel improvements on large projects cannot be capped based on an unreasonable hardship.  A large project is one where the cost exceeds an annually adjusted index, or where a series of projects over a three-year period cost more than that threshold.

**2. Architectural Barriers Under The ADA**

Since 1990, the Americans with Disabilities Act, at section 42 USC 12182 (b)(2)(A)(iv) has required that features that do not meet the standards for access (ADAAG), are barriers and must be corrected. This obligation applies to existing facilities regardless of the age of the building or whether any construction or alterations have been done, although special allowances may apply to truly historic buildings. The extent to which the obligation applies is limited to tasks that are "readily achievable".

There is no formulaic definition of what meets the standard of "readily achievable". It is determined in part on the "overall financial resources" of the responsible parties. It is beyond the scope of this assignment to make such a determination at this time.

*ADA Title III Sec.36.201*

*(b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.*

Under the ADA an access barrier is "readily achievable" if the removal is "easily accomplishable and able to be carried out without much difficulty or expense." Factors to be considered when determining whether removing a barrier is "readily achievable" are set out in the ADA §301 (9) [42 USC 12181], which states:

*(9) READILY ACHIEVABLE- The term `readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include--*

   *(A) the nature and cost of the action needed under this Act;*

   *(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;*

   *(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and*

   *(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.*

**PART III: SUMMARY OF INACCESSIBLE CONDITIONS**

**ACCESS TO THE PUBLIC ENTRANCE:**
    Change of level: Entering the normal public entrance to the restaurant, from the sidewalk on El Camino Real, requires traveling up a 5-1/2" high step, and there is no available accessible alternative.

    Door Operation: Each leaf of the paired entry doors requires 11lb.s of force to open, where maximum 5lb. is allowed. Both doors also close faster than the minimum allowable 3 seconds.

    Door Design: Both doors provide only a 4-1/2" wide bottom rail, where a minimum 10" wide bottom panel is required for the footrest of a wheelchair to push against.

**SEATING:**
    Knee Space: The small tables that seat 2 to 4 people are okay but the five large tables that seat 12 to 14 people provide only a 26" high space under the table, where a minimum of 27" is required for wheelchair users.

**ROUTE TO RESTROOM**
    Door Hardware: On the door into the vestibule that is outside of the restrooms, round door knobs are provided where lever-style hardware or equivalent is required.

**MEN'S RESTROOM**
    Signage: Signage that displays raised letters, Braille, and Geometric symbols is not provided as required.

    Entry Door Landing: A storage unit obstructs the required door landing, reducing it to only 48" deep where minimum 60" is required.

    Lavatory: The center of the fixture is mounted 14" from the adjacent sidewall, where minimum 18" of distance is required.

    Toilet Grab Bar: The side grab bar does not extend far enough. It is improperly installed so that its leading edge is only 50" from the wall behind the toilet, where minimum 54" is required. Lumber is also stored in such a way as to obstruct the space that is required between the grab bar and the wall that it is mounted on.

    Toilet Paper Dispenser: The unit is too far from the toilet. Its leading edge is 50" from the wall that is behind the toilet, where the maximum allowable distance is 36".

    Toilet Maneuvering Space: Cleaning supplies obstruct the space beside the toilet that is needed for safely transferring to the fixture from a wheelchair. This reduces the space to only 22" wide, where a minimum of 32" is required.

**WOMEN'S RESTROOM**

Signage: Required raised letter, Braille, and Geometric symbol are not provided.

Entry Door Landing: A storage unit obstructs the required door landing, reducing it to only 48" deep where minimum 60" is required.

Lavatory: The center of the fixture is mounted 14" from the adjacent sidewall, where minimum 18" of distance is required.

Toilet Grab Bar: The side grab bar does not extend far enough. It is improperly installed so that its leading edge is only 50" from the wall behind the toilet, where minimum 54" is required. Lumber is also stored in such a way as to obstruct the required space between the grab bar and the wall that it is mounted on.

Toilet Paper Dispenser: The unit is too far from the toilet. Its leading edge is 49-1/2" from the wall that is behind the toilet, where the maximum allowable distance is 36".

Toilet Maneuvering Space: Cleaning supplies obstruct the space beside the toilet that is needed for safely transferring to the fixture. This reduces the space to only 22" wide, where a minimum of 32" is required.


**PARKING**

Signage: Enforcement signage is not posted, warning that unauthorized vehicles parked in the accessible spaces will be towed.

Size of Space: Dumpsters are located so that the usable length of both the vehicle space and the adjacent access aisle are reduced to only 13-ft where minimum 18-ft is required.

Slope of Space: Uplifted asphalt creates an extensive area that slopes 16% to 19%, where a maximum slope of 2% is allowable.


**ROUTE FROM PARKING LOT TO THE PUBLIC ENTRANCE**

There are two possible routes from the parking lot at the back of the restaurant to the public, front entrance on El Camino Real.

Route A (385 feet long) requires traveling north down an alley to 22nd St., then turning east to El Camino and proceeding to the public entrance. This route contains the following inaccessible features:
• Potholes in the alley
• Abrupt change of level (3" high) where the alley meets the sidewalk of 22nd street.
• Curb ramp at the corner of 22nd St. and El Camino Real is too steep; it slopes 11%, where maximum 8.3% is allowed.
• A wall-mounted public telephone enclosure (no telephone inside) protrudes into the required clear width at base of curb ramp.

Route B (510 feet long) requires traveling south down an alley to 23rd street, then turning east to El Camino and proceeding to the public entrance. This route contains the following inaccessible features:
• The first 50 to 75 feet of the route contains abrupt changes of level along the deteriorated pavement of the alley.

## PART IV: DETAILED INVENTORY OF ARCHITECTURAL BARRIERS

The following Inventory of Barriers lists the features that do not meet the regulatory standards for disabled access, as stated in the:
    CBC: CA Building Code (Title 24 Part 2 – Volume 1)
    ADAAG: The Americans with Disabilities Act (Title III – 28 CFR Part 36, Appendix A)
    ANSI A117.1 – 1961 The American National Standard Institute
    ADA: Title III of the Americans with Disabilities Act pertaining to places of public accommodation.

The third column describes the enforceable requirement for a given feature while the fourth column lists the code section where that requirement can be found.

**LEGEND**
For efficiency purposes, this section employs the use of abbreviations as follows:

| | | |
|---|---|---|
| ADAAG | = | Americans with Disabilities Act Accessibility Guidelines |
| AFF | = | Above Finish Floor |
| CBC | = | California Building Code |
| CL | = | Centerline |
| ISA | = | International Symbol of Accessibility |
| POT | = | Path of Travel |
| PROW | = | Public Right of Way |
| Title 24/CBC | = | California Title 24 Accessibility Standards |

Referenced photos are numbered and located at the back of the report.

| # | Barrier Description | Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| **1.0** | **PARKING** | | | | |
| 1.1 | Signage: Enforcement signage is not posted, that warns that unauthorized vehicles parked in the accessible spaces will be towed | Tow-Away signage must be installed at each entrance to the lot or visible from each parking space. Sign must be min. 17" x 22", with min. 1" tall letters, and state: "Accessible spaces not displaying distinguishing placards or license plates issued for persons with disabilities may be towed away at owner's expense. Towed vehicles may be reclaimed at _ _ _ _ or by telephoning _ _ _ _ _ _ " Blank spaces are to be filled in with appropriate information as a permanent part of the sign. | CBC 1129B.5 | Post the required signage | 1-1 |

| # | Barrier Description | Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| 1.2 | Size of Space: Dumpsters are located so that the usable length of both the vehicle space and the adjacent access aisle are reduced to only 13-ft | Minimum 18-ft is required. | CBC 1129B.4(1) | Relocate the dumpsters | 1-2 |
| 1.3 | Slope of Space: Uplifted asphalt creates an extensive area that slopes 16% to 19%, | Parking spaces and access aisles shall be level, with surface slopes not exceeding 1:50 (2%) in all directions. | ADAAG 4.6.3 | Replace the uplifted area of asphalt to produce slopes no greater than 2%. | 1-3a 1-3b |
| **2.0** | **ROUTE FROM PARKING LOT TO THE PUBLIC ENTRANCE** <br> There are 2 available routes from the parking lot at the back of the restaurant to the public entrance that faces El Camino Real at the front of the restaurant | | | | |
| 2.1 | **Route A** (385 feet long) requires traveling north down an alley to 22nd St., then turning east to El Camino and proceeding to the public entrance. This route contains the following inaccessible features: | *ADAAG 4.3.2(1) At least one accessible route within the boundary of the site shall be provided from - - - accessible parking, and accessible passenger loading zones, and public streets or sidewalks to the accessible building entrance they serve* | | Remove the barriers along either Route A or Route B, and post directional signage indicating which direction provides the accessible path of travel. <br><br> – – – – – – – – – – – – | 2-1a 2-1b 2-1c 2-1d |
| | a) Abrupt changes in level - Potholes in the alley <br><br> b) Abrupt change of level (3" high) where the alley meets the sidewalk of 22nd street. | (a and b) Changes in level up to 1/4 in may be vertical and without edge treatment; Changes in level between 1/4 in and 1/2 in must be beveled with a slope no greater than 1:2; Changes in level greater than 1/2 in must be accomplished by means of an accessible ramp | ADAAG 4.5.2 | | |
| | c) Curb ramp at the corner of 22nd St. and El Camino Real is too steep; it slopes 11% | c) Curb ramps may slope no steeper than 8.33% | ADAAG 4.7.2 | | |
| | d) A wall-mounted public telephone enclosure (no telephone inside) protrudes into the required clear width at the base of the curb ramp. | d) The minimum clear width of an accessible route must be 36 in except at doors | ADAAG 4.3.3 | | |
| 2.2 | **Route B** (510 feet long) requires traveling south down an alley to 23rd street, then turning east to El Camino and proceeding to the public entrance. This route contains the following inaccessible features: <br><br> a) The first 50 to 75 feet of the route contains abrupt changes of level along the deteriorated pavement of the alley | (b) Changes in level between 1/4 inch and 1/2 inch must be beveled with a slope no greater than 1:2; Changes in level greater than 1/2 in must be accomplished by means of an accessible ramp | ADAAG 4.5.2 | See Item 2.1 above | 2-2a |

| # | Barrier Description | Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| **3.0** | **PUBLIC ENTRANCE** | | | | |
| 3.1 | Change of level: Entering the normal public entrance to the restaurant from the sidewalk on El Camino Real, requires traveling up a 5-1/2" high step and there is no available accessible alternative | Changes in level greater than 1/2 in must be accomplished by means of an accessible ramp | ADAAG 4.5.2 | Perform Option A or B, however, if both of those options are proved to be legally or structurally infeasible, perform Option C.<br><br>**A) EXTERIOR RAMP:** Install an exterior ramp as shown in **Drawing A**. The ramp would provide an accessible route up to the existing door landing from the public sidewalk; This solution would require a sidewalk encroachment permit from CA Dept. of Transportation (Caltrans)<br><br>**B) INTERIOR RAMP:** If a sidewalk encroachment permit cannot be acquired, install an inclined walkway or a ramp on the interior of the building, as shown in **Drawing B**. This solution would require lowering the exterior door landing so that it is at the same level as the public sidewalk, and then, on the inside of the building, ramping up to the restaurant's floor level. Note: If the inclined portion of the interior route slopes less than 5% it would not be considered a ramp. The level areas at the top and bottom of the slope could be smaller than if the slope was greater than 5%, and handrails would not be required.<br><br>**C) RAMPED LANDING**: If it can be demonstrated that neither A, nor B are feasible, install a non-conforming exterior ramp as shown in **Drawing C**. Such a ramp would begin at the sidewalk level and rise continuously all the way up to the entry doors. Such a ramp would not provide a level landing at the door as required by codes. Installing a power-operated door opener would mitigate that deficiency | 3-1 |

| # | Barrier Description | Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| 3.2 | Door Operation:<br><br>1) Each leaf of the paired entry doors requires 11lb.s of force to open.<br><br>2) Both doors also close faster than the minimum allowable 3 seconds. | 1) Maximum effort to operate exterior and interior doors may not exceed 5-lb.<br><br>2) Doors with closers may not close faster than 3 second from an open position of 70 degrees to a point 3-inch from the latch | CBC 1133B.2.5<br><br>ADAAG 4.13.10 | Adjust or replace the door closers as needed to produce max. 5lb. door pressure and minimum 3-second closing time. | No Photo |
| 3.3 | Door Design: Both doors provide only a 4-1/2" wide bottom rail. | The bottom 10" of a door must be free of interruptions that can snag a wheelchair's footrest | CBC 1133B.2 | Install the commercially available retrofit device that extends the width of the door's bottom rail | 3-3 |
| **4.0** | **SEATING** | | | | |
| 4.1 | Knee Space: The small tables that seat 2 to 4 people are okay but the five large tables that seat 12 to 14 people provide only a 26" high space under the table | A minimum of 27" high knee space is required for wheelchair users ***<br><br>Each dining, banquet and bar area shall have one wheelchair seating space for each 20 seats, with at least one minimum wheelchair seating space per functional area and shall comply with Section 1122B, "Fixed or Built–in Seating, Tables, and Counters<br><br>Wheelchair seating shall be on an accessible route, have a surface that is 28" to 34" high, and provide accessible kneespace under the counter or tabletop, yielding:<br>30" min. width<br>27" min. height ***<br>19" min. depth | CBC 1104B.5(4)<br><br><br>CBC 1122B | Raise the large tables a minimum of 1-inch (2" preferred). | 4-1a<br>4-4b |
| **5.0** | **ROUTE TO RESTROOM** | | | | |
| 5.1 | Door Hardware: Round door knobs are provided n the door into the vestibule that is located outside of the restrooms, | Hardware must be operable with a single effort by lever–type hardware, panic bars, or other hardware that does not require tight grasping, pinching or twisting of the wrist, nor more than 5lb. of force | ADAAG 4.13.9 | Replace round doorknobs with lever hardware | 5-1 |

| # | Barrier Description | Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| **6.0** | **MEN'S RESTROOM** | | | | |
| 6.1 | Signage: Tactile signage and a geometric symbol are not displayed. | Signage that displays raised letters, Braille, and a 12" equilateral triangular symbol is required<br><br>Tactile: Numbered rooms, restrooms, and exits must display tactile signage (i.e. Raised characters and Braille) on the wall beside the latching edge of the door, centered at 60" AFF<br><br>Geometric: Doorways leading to men's sanitary facilities shall be identified by an equilateral triangle ¼" thick with edges 12" long and a vertex pointing upward | ADAAG 4.1.3(16)(a)<br><br>CBC 1115B.5 | Install required signage | 6-1 |
| 6.2 | Entry Door Landing: A storage unit obstructs the required door landing, reducing its depth to only 48" | Minimum 60" deep landing is required on the side toward which a door swings | ADAAG 4.13.6 | Remove 24" deep storage unit. *Note: Shelving that is no deeper than 12" would not encroach into the required maneuvering space* | 6-2 |
| 6.3 | Lavatory: The center of the fixture is mounted 14" from the adjacent sidewall | Lavatories, when located adjacent to a sidewall or partition, shall be a min. of 18" to the centerline of the fixture. | CBC 1115B.2.1.2.1 | Relocate the lavatory laterally 4-inches | 6-3a<br>6-3b |
| 6.4 | Toilet Grab Bar:<br>1) The side grab bar does not extend far enough. It is improperly installed so that its leading edge is only 50" from the wall behind the toilet'<br><br>2) Lumber is also stored in such a way as to obstruct the space that is required between the grab bar and the wall that it is mounted on | 1) Side grab bar shall extend a min. of 54" from the rear wall<br><br><br>2) A space measuring exactly 1-1/2" wide is required between the grab bar and the wall. | ADAAG Fig. 29<br><br><br>ADAAG 4.26.2 | Move the side grab bar 4-inch further from the rear wall, and remove the lumber that it stored there. | 6-4 |
| 6.5 | Toilet Paper Dispenser: The dispenser is too far from the toilet. Its leading edge is 49-1/2" from the wall that is behind the toilet. | The leading edge of the toilet paper must be no further than 36" from the wall that is behind the toilet | ADAAG Fig. 30 | Move the dispenser 14" closer to the toilet. | 6-5 |
| 6.6 | Toilet Maneuvering Space: Cleaning supplies obstruct the space beside the toilet that is needed for safely transferring to the fixture from a wheelchair. This reduces the usable space to only 22" wide | A minimum 32" wide space is required on one side of the toilet. | CBC Fig. 11B-1A & 1B | Remove the cleaning supplies and other movable objects that obstruct the required maneuvering space. | 6-6a |

| # | Barrier Description | Requirement | Code Ref. | Recommendation | Photo |
|---|---|---|---|---|---|
| **7.0** | **WOMEN'S RESTROOM** | | | | |
| 7.1 | Signage: Tactile signage and a geometric symbol is not displayed. | Signage that displays raised letters, Braille, and a 12" equilateral triangular symbol is required<br><br>Tactile: Numbered rooms, restrooms, and exits must display tactile signage (i.e. Raised characters and Braille) on the wall beside the latching edge of the door, centered at 60" AFF<br><br>Geometric: Doorways leading to Women's sanitary facilities shall be identified by a circle, ¼" thick and 12" in diameter | ADAAG 4.1.3(16)(a)<br><br>CBC 1115B.5 | Install required signage | 7-1 |
| 7.2 | Lavatory: The center of the fixture is mounted 14" from the adjacent sidewall | Lavatories, when located adjacent to a sidewall or partition, shall be a min. of 18" to the centerline of the fixture. | CBC 1115B.2.1.2.1 | Relocate the lavatory laterally 4-inches | 7-2 |
| 7.3 | Toilet Grab Bar: The side grab bar does not extend far enough. It is improperly installed so that its leading edge is only 50" from the wall behind the toilet, where minimum 54" is required. | The leading edge of the side grab bar must be a minimum of 54" from the wall that is behind the toilet. | ADAAG Fig. 29 & 30 | Move the side grab bar 4-inch further from the rear wall | 7-3 |
| 7.4 | Toilet Paper Dispenser: The dispenser is too far from the toilet. Its leading edge is 49-1/2" from the wall that is behind the toilet. | The leading edge of the toilet paper must be no further than 36" from the wall that is behind the toilet | ADAAG Fig. 30 | Move the dispenser 14" closer to the toilet. | 7-4 |
| 7.5 | Toilet Maneuvering Space: Cleaning supplies obstruct the space beside the toilet that is needed for safely transferring to the fixture. This reduces the usable space to only 23" wide | A minimum 32" wide space is required on one side of the toilet. | CBC Fig. 11B-1A & 1B | Remove the vacuum cleaner and other movable objects that obstruct the required maneuvering space. | 7-5 |

## PART V: RECOMMENDATIONS

PARKING
**1.1**    Post the required signage that warns that unauthorized vehicles parked in the accessible spaces will be towed

**1.2**    Relocate the dumpsters so that they do not encroach into the accessible parking area

**1.3**    Replace the uplifted area of asphalt in the accessible parking area in order to produce slopes no greater than 2%.


ROUTE FROM PARKING
**2.1 + 2.2**    Remove the barriers along either Route A, which uses 22nd St, or Route B, which uses 23rd St., and post signage that indicates which direction provides the accessible path of travel.

    Route A: • Potholes in alley
            • Abrupt change of level (3" high) where the alley meets the sidewalk of 22nd street.
            • Steep curb ramp at 22nd St. and El Camino
            • Protruding telephone enclosure at 22nd and El Camino

    Route B • Abrupt changes in level along the deteriorated pavement of the alley


PUBLIC ENTRANCE
**3.1**    Perform Option A or B, however, if both of those options are proved to be legally or structurally infeasible, perform Option C.

    A) Within the public sidewalk, install an exterior ramp that rises to the existing raised door landing (See Drawing A).

    B) Install an inclined walkway or a ramp on the interior of the building,  by lowering the exterior door landing so that it is at the same level as the public sidewalk, and then, on the inside of the building, ramp up to the restaurant's floor level. (See Drawing B)

    C) Install a non-conforming exterior ramp that begins at the sidewalk level and rises continuously, all the way up to the entry doors. Such a ramp would not conform to the requirements for a level landing at the door. Installing a power-operated door opener would mitigate that deficiency (See Drawing C).

**3.2**    Adjust or replace the closers on the doors to the front entrance, as needed to produce max. 5lb. door pressure and minimum 3-second closing time.

**3.3**    Install the commercially available retrofit device that extends the height of the door's bottom rail


SEATING
**4.1**    Raise the large tables that seat 10 to 12 people, so that the space under the tables is at least 27" high


ROUTE TO RESTROOM
**5.1**    On the door that is between the dining room and the restroom vestibule, replace the round doorknobs with lever hardware

MEN'S RESTROOM

**6.1**    Install required Tactile, Braille, and Geometric signage

**6.2**    Remove 24" deep storage unit from within the vestibule that is outside of the restroom. It may be replaces with one that is maximum 12" deep.

**6.3**    Move the lavatory laterally, a distance of 4-inches, in the direction away from the entry door.

**6.4**    Move the side grab bar 4-inch further from the rear wall so that it extends 24-in beyond the leading edge of the toilet, and remove the lumber that is stored there and obstructs using the grab bar.

**6.5**    Move the toilet paper dispenser 14" closer to the toilet.

**6.6**    Remove the cleaning supplies and other movable objects that obstruct the required maneuvering space.

WOMEN'S RESTROOM

**7.1**    Install required Tactile, Braille, and Geometric signage

**7.2**    Move the lavatory laterally, a distance of 4-inches in the direction away from the entry door.

**7.3**    Move the side grab bar 4-inch further from the rear wall so that it extends 24-in beyond the leading edge of the toilet.

**7.4**    Move the toilet paper dispenser 14" closer to the toilet.

**7.5**    Remove the vacuum cleaner and other movable objects that obstruct the required maneuvering space.